THOMAS P. SMITH *v.* R. W. ADAMS & Co. et al.

The 9th section of the Act of 1855, relative to District Courts for the parish and city of New Orleans, declaring that all successions shall be opened and administered in the Second District Court, the other District Courts of New Orleans have no jurisdiction over suits instituted against a succession.

The acceptor of a bill has no right to inquire into the consideration between the drawer and payee and between the latter and a subsequent indorsee.

Not even accommodation acceptors, and that to the knowledge of payee, have a right to plead in compensation or reconvention a debt due by payee to the drawer of a draft.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.

*Whitaker & Fellows,* for plaintiff. *Singleton & Clack,* for defendants and appellants.

COLE, J. Plaintiff sues *R. W. Adams & Co.,* and *W. C. Templeton,* the administrator of the succession of *J. J. Kercheval,* on a draft drawn by *Kercheval* in his lifetime on *R. W. Adams & Co.,* and accepted by them, payable to the order of petitioner.

The administrator of *Kercheval* excepted to the jurisdiction of the Fourth District Court, where the suit was brought, on the ground that the Second District Court of New Orleans, in which the succession had been opened, alone had jurisdiction.

The exception was properly sustained.

Art. 164 of the Code of Practice, provides, that in matters relative to successions, the defendants, though domiciliated elsewhere, must be cited to appear before the court of the place where the succession has been opened, in all suits brought by the creditors of the deceased, previous to the partition.

The 9th section of the Act of 1855, relative to District Courts for the parish and city of New Orleans, declares, that all successions shall be opened and administered in the Second District Court.

The 11th section of this Act merely gives concurrent jurisdiction to the District Courts of New Orleans of civil cases, which are not referred to the jurisdiction of a special court, except, however, the First District Court, which is confined exclusively to criminal cases. Sess. Acts 1855, p. 315.

As, therefore, the administration of estates is referred specially to the Second District Court, the other District Courts of New Orleans have no jurisdiction over suits instituted against them.

Upon the merits, there was judgment for plaintiff against *R. W. Adams & Co.,* and they have appealed.

The only question is, whether appellants, as accommodation acceptors to the knowledge of plaintiff, can plead in compensation a debt due by plaintiff to *Kercheval,* the drawer of the draft.

It is well settled that an acceptor of a bill has no right to inquire into the consideration between the drawer and payee, or between the latter and a subsequent indorsee. *Davidson* v. *Keyes,* 2 Rob. p. 256. *Debuys* v. *Longer & Johnson,* 4 M. N. S. p. 288.

The total or partial want or failure of consideration, or the illegality of consideration, as a general rule, may be insisted upon as a defence or a bar between any of the immediate or original parties to the contract, as by the drawer against
52

the payee, by the payee against his indorsee, and by the acceptor against the drawer. Story on Bills, ₰187.

Defendant insists that this defence fails only against *bona fide* holders, or those claiming through them, and that original parties can set up such defence as well as others, where the facts are fully disclosed. He refers to Story on Bills, ₰₰188, 191.

It is unnecessary to express any opinion upon this point on account of the view we have taken of the defence.

It appears that plaintiff sold his one-fourth interest in the steamboat Selma to *Kercheval*, for which he drew in payment the draft in contestation on *R. W. Adams & Co.*, the defendants. That previous to the sale of the steamboat, some bales of cotton had been shipped upon her, which had not been called for on her arrival at her port of destination, and they were sold by the boat, and their proceeds were placed upon the suspense account of the books of the boat.

When the owner of the cotton called for its proceeds and was paid, the suspense account was credited with it.

It also is shown that plaintiff obligated himself in writing to pay his proportion of the cotton, provided *Capt. Perry* paid his proportion of the same.

The proceeds of the cotton were used for the expenses of the boat, until the owner demanded them.

The boat was sold before the proprietor of the cotton called for its proceeds, and consequently before it was known that the owner would ever be discovered. It is contended that plaintiff owes to *Kercheval*, the maker of the draft, and purchaser of plaintiff's fourth interest, the one-fourth of the proceeds of the cotton, used to defray the expenses of the boat whilst plaintiff was part owner, and which the boat was obliged to refund to the owner of the cotton, and that defendants, as accommodation acceptors, are entitled to have deducted from the draft one-fourth of the proceeds of the cotton, on the ground that plaintiff knew defendants to be accommodation acceptors at the time they accepted the same.

The evidence in the record does not establish that defendants were accommodation acceptors, or that plaintiff knew such to be the fact.

The only testimony on this point is that of *Perry*, who testifies, he " thinks *Smith* told witness that *Kercheval* had drawn on *Adams* for a part of the price, does not know for what amount."

Even supposing, however, it should be admitted that defendants were accommodation acceptors, and that plaintiff knew such to be the fact, still defendants cannot plead in compensation and reconvention the one-fourth of the proceeds of the cotton, because this can only be considered as a debt due by plaintiff, if at all, to *Kercheval*, the purchaser of his fourth interest in the boat. It is a claim personal to *Kercheval*, which his administrator may demand. It may be, that in a contest between defendants and the succession of *Kercheval*, that the latter might show that they had secured defendants subsequently to their acceptance. It was only after the sale of the interest of plaintiff in the boat, that it became known that the proceeds of the cotton would have to be refunded by the boat, and it was only then that plaintiff became in reality indebted, if he is so, for one-fourth thereof, and this was after the acceptance.

It is clear that the acceptors cannot plead in compensation this debt of plaintiff to the drawer of the draft. It may be in a contest between plaintiff and the succession of *Kercheval*, that the former could offset the debt with claims against the estate, or show he was released.

Besides, there was no failure of consideration between plaintiff and *Kercheval;* the latter received the fourth interest of the boat which he had bought of the former, and for which the draft was given. The subsequent liability of *Kercheval* for a debt of the boat originating indeed before the sale may make plaintiff liable to him for the same, but does not prove that the fourth interest was not worth the amount given for it at the time of the purchase. As *Kercheval* was willing to give the draft and incur the risk of the owner of the cotton calling for the proceeds, and depend on the good faith of plaintiff to pay his proportion of the debt, the acceptor cannot compensate his acceptance with a debt of *Kercheval,* which does not belong to him. The fourth interest was a good consideration for the draft, and the good faith and ability to pay, if plaintiff were deemed a sufficient guaranty for the eventual liability of the boat, for his share of the debt for the cotton.

Judgment affirmed, with costs of appeal.